1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT
6            FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    UNITED STATES OF AMERICA,                    No. CR 03-00236 SI
9              Plaintiff,                         **ORDER DENYING MOTION TO**
                                                  **VACATE, SET ASIDE, OR CORRECT**
10       v.                                       **SENTENCE**
11   NIKOLAI TEHIN,
12              Defendant.
                                          /
13

14         Before the Court is defendant's motion to vacate, set aside, or correct his sentence pursuant to

15   28 U.S.C. § 2255.  On October 14, 2004, a jury convicted defendant Nikolai Tehin of six counts of mail

16   fraud and nine counts of money laundering.  On April 19, 2005, Tehin was sentenced to 170 months in

17   prison.  Tehin now challenges his conviction on the basis that one of the theories of mail fraud under

18   which he was convicted – the "honest services" theory of mail fraud – has been deemed

19   unconstitutionally vague by the Supreme Court in *Skilling v. United States*, 130 S. Ct. 2896 (2010) when

20   applied to any conduct other than bribery and kickbacks, neither of which is applicable here.  Tehin also

21   argues that the money laundering counts present a "merger problem" with the mail fraud counts and are

22   therefore invalid under *United States v. Santos*, 533 U.S. 507 (2008).  Finally, Tehin argues that the mail

23   fraud statute as applied here is beyond the Federal Government's jurisdiction and enumerated powers.

24   The government has filed an opposition.  Having considered the parties' papers and arguments therein,

25   and for the reasons set forth below, the Court hereby DENIES defendant's motion.

26
27
28

**United States District Court**
**For the Northern District of California**

**BACKGROUND**

**I.     Factual Background**

Defendant Tehin, admitted to practice law in California in 1972, was a civil plaintiff's attorney with his own San Francisco-based firm ("Tehin + Partners") specializing in medical and legal malpractice, personal injury, and commercial disputes.  From 2001 to 2002, Tehin used funds in the client trust account for personal and business expenses.  When clients demanded that Tehin release their settlement payments, Tehin paid them with funds belonging to other clients.  By the end of 2002, Tehin was under investigation by the State Bar of California, and, in July of 2003, he was indicted by a federal grand jury and charged with six counts of mail fraud and nine counts of money laundering.

The central witness in the case against Tehin was his assistant and office manager, Melissa De La Rosa.  She testified that settlement checks from resolved cases would be placed in the firm's trust account.  7 RT 1040.[1]  Tehin would tell De La Rosa which bills to pay from the firm's accounts.  7 RT 1046. Money from the client trust account was "considered in the overall picture of how much money was available to pay bills."  7 RT 1047.  Bills paid from the firm's accounts – including money in the trust account that was owed to clients – included Tehin's personal bills, such as his mortgage payments, yacht club fees, electric bills, and membership dues.  7 RT 1050, 1053.  There were often insufficient funds in the clients' account to pay all of the clients.  7 RT 1051.  Because there were insufficient funds, clients were paid based on "whoever was yelling the loudest."  7 RT 1094.

For example, in the Vintage Ranch Case, Tehin represented more than 100 low-income tenant families, mainly Spanish-speaking farm workers in Napa, California, who sued the owners of the apartment buildings in which they lived for maintaining sub-standard living conditions.  Tehin was brought into the case by Legal Aid of the North Bay.  The case settled in early 2001 for $2 million; the settlement funds were given to Tehin + Partners and were deposited into the firm's client trust accounts. After taking his fees and making an agreed-upon donation to Legal Aid, Tehin was required to retain $1.3 million of the settlement for distribution to the Vintage Ranch tenants.  The $2 million in settlement proceeds from the case were deposited in the firm's trust accounts on July 31, 2001.  11 RT 2075.

---

[1]RT refers to the Reporter's Transcript of the trial.

United States District Court
For the Northern District of California

However, by November 30, 2001, the balance in the client trust account was down to $784.94.  11 RT 2078.  Only $6,500 in Vintage Ranch settlement funds had been distributed to a single Vintage Ranch client.  11 RT 2078-79.

Tehin eventually paid most of the Vintage Ranch clients; however, he used settlement money from other clients to do so.  For example, in a medical malpractice case, Tehin represented the mother of a woman named Mary Ferry, who was sent home untreated and later refused admittance by a hospital despite severe psychiatric problems.  The case settled in 2001 for $200,000.  De La Rosa testified that Tehin used the Ferry funds to pay various Vintage Ranch tenants.  7 RT 1114.  Though Tehin had received the Ferry settlement check and deposited it in January 2002, he did not inform Nancy Ferry (Mary's mother) that he had received the funds until April 2002.  4 RT 561.  Ferry eventually received a check for $103,000, which represented a portion of what was owed her.  4 RT 563.  An accounting provided along with the checks included fees for seven expert witnesses, which Ferry considered "unusual" and "seem[ed] excessively high."  4 RT 570.  Ferry did not believe the expert witnesses had ever worked on the case, and complained to the State Bar.  4 RT 577.  The State Bar launched an investigation.  7 RT 1121.  De La Rosa testified that Tehin then told her to "make up some check requests" for the experts.  7 RT 1123.  She did so, backdating the check requests to substantiate the expert fees.  *Id.*  Tehin eventually sent Ferry a "second amended attorney's accounting" excluding the expert fees and stating that Ferry was owed another $28,000.  4 RT 576.  Tehin never paid Ferry the money owed.  4 RT 577-578.

The government provided evidence that between March 1st and December 1st 2001, Tehin paid approximately $600,000 toward his mortgage payments from the firm's trust and operating accounts, as well as more than $205,000 to a boat repair company for repairs to his yacht.  11 RT 2092, 2096.  Numerous clients never received their settlement funds.

## II.    Procedural Background

A superseding indictment was filed on July 13, 2004.  Counts One through Six – the mail fraud counts – alleged that Tehin

United States District Court
For the Northern District of California

> knowingly and willfully devised and intended to devise a scheme and artifice:
> (A) to defraud; (B) to obtain money and property by means of materially false
> and fraudulent pretenses, representations, promises, and omissions; (c) and to
> deprive his clients of their intangible right to his honest services as their
> attorney.

Opp'n Ex. A (Indictment) at 3. The mail fraud counts are based on both a "money and property" theory of mail fraud (subsection B) as well as an "honest services" theory of mail fraud (subsection C). Counts Seven through Eleven – the first five money laundering counts – alleged that Tehin "did knowingly conduct financial transactions which affected interstate commerce with the proceeds of a specified unlawful activity – namely, mail fraud, . . . with the intent to promote the carrying on of the specified unlawful activity." Indictment at 10. Counts Twelve through Fifteen – the latter four money laundering counts – alleged that Tehin "did knowingly engage in monetary transactions which affected interstate commerce in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities – namely, mail fraud." Indictment at 11. The predicate act for the money laundering counts was mail fraud.

During the seven-week trial, the Government presented witnesses and evidence supporting the two theories of mail fraud: the money or property theory, and the honest-services theory. Now-retired Judge Vaughn Walker instructed the jury that it could convict on either theory. 24 RT 4198. As the elements of money or property mail fraud, Judge Walker informed the jury that the Government must prove that

> 1) the defendant knowing devised or intended to devise a scheme or plan for obtaining
> property; 2) the defendant executed the plan or scheme for obtaining property either A)
> by making promises or statements, knowing that the promises or statements were false
> . . . or, B) by omitting to disclose information that he had a duty to disclose, knowing
> that he had a duty to disclose the information . . . . 3) the promises, statements, or
> omissions were material; 4) the defendant acted with the intent to defraud; and 5) the
> defendant used or caused someone to use the mails to carry out or attempt to carry out
> an essential part of the scheme."

RT at 4199-4200. To convict on an honest-services theory of mail fraud, Judge Walker instructed the jury that it must find that

> 1) the defendant knowingly devised or intended to devise a scheme or plan to deprive
> his client of a right to honest services; 2) . . . the defendant acted with the intent to
> deprive his client of a right to honest services; 3) the defendant stood in a relationship
> to his client that gave rise to a duty of loyalty comparable to that owed by an employee
> to his employer; 4) the defendant purported to act for and in the interest of his client; 5)

4

but instead the defendant secretly acted in his own interest; 6) this was accomplished by a material misrepresentation made or material omission of information disclosed to the client . . . ; 7) the defendant acted with the intent to defraud; and 8) the defendant used, or caused someone to use, the mails to carry out or to attempt to carry out the scheme or plan.

RT at 4200-01.

The jury returned verdicts of guilt on the six counts mail fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2, the five counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(I) and 2, and the four counts of money laundering in violation 18 U.S.C. §§ 1957 and 2.  On a special verdict form, the jury indicated that it was convicting Tehin of mail fraud on *both* the money or property theory and the honest-services theory.  Opp'n Ex. C at 2-7.  Tehin was sentenced to 170 months in prison.

Tehin appealed his conviction and sentence.  Tehin argued that the district court erred by denying his Rule 29 Motion for a Judgment of Acquittal on the ground that, because he was legally required to send the mailings on which his six mail fraud convictions and five of his money laundering convictions were based, those mailings were insufficient to support the convictions.  App. Br. at 31. Tehin appealed his sentence on the grounds that the district court erred by substituting its own factual determination of the number of victims for that of jury, App. Br. at 33, by making the factual determination of the date of detection, App. Br. at 36, and by applying an obstruction of justice enhancement for conduct that occurred "before the instant investigation or prosecution had commenced," App. Br. at 38.  The Ninth Circuit Court of Appeals, in an unpublished decision issued on March 16, 2007, affirmed his conviction and sentence.  *United States v. Tehin*, No. 05-10328, 2007 WL 836713 (9th Cir. March 16, 2007) (mem.).

On June 20, 2011, Tehin filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The case was reassigned to this Court.  Tehin moved for appointment of counsel and, on September 2, 2011, this Court denied his motion.  The Government filed an opposition to the motion to vacate, and Tehin replied.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the

5

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the court finds that relief is warranted under § 2255, it must "'vacate and set the judgment aside'" and then do one of four things: "'discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.'" *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (quoting 28 U.S.C. § 2255). Vacating the judgment does not prevent the reinstatement of unchallenged counts when the court decides to resentence or correct the sentence. *See id.* (district court erred in rescinding entire plea agreement and returning the parties to the pre-plea status quo when the defendant established a lack of factual basis for a guilty plea as to one of the counts to which he pled guilty).

Congress enacted § 2255 "to simplify the habeas process for federal prisoners. The section provides 'a remedy [in the sentencing court] exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.'" *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (quoting *Hill v. United States*, 368 U.S. 424, 427 (1962)). A motion to vacate, set aside or correct a federal sentence under § 2255 must be filed within one year of the latest of the date on which: (1) the judgment of conviction became final; (2) an impediment to making a motion created by governmental action was removed, if such action prevented petitioner from making a motion; (3) the right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Equitable tolling applies to § 2255 motions. *United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004).

Section 2255 may not be used as a chance at a second appeal. *Berry*, 624 F.3d at 1038 (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998); *Reed v. Farley*, 512 U.S. 339, 354 (1994). A federal prisoner who could have raised a claim of error on direct appeal, but failed to do so, procedurally defaulted the claim and may obtain collateral review of it under § 2255 only if he can show either cause and actual prejudice or that he is actually innocent. *See Bousley*, 523 U.S. at 621 (prisoner who failed to challenge validity of guilty plea on appeal procedurally defaulted claim); *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003)

1    (prisoner who failed to bring claims of error on direct appeal procedurally defaulted them).

2

3    **DISCUSSION**

4    Tehin argues that the recent Supreme Court decisions in *Skilling v. United States* and *Santos v.*

5    *United States* invalidate his mail fraud and money laundering convictions.  Tehin's motion includes five

6    grounds on which he claims relief.  First, he contends that in light of *Skilling*'s narrowing of honest-

7    services mail fraud to include only bribery and kickback schemes, the jury instructions in his trial were

8    erroneous and that the error was not harmless.  He argues that this error in the mail fraud counts infected

9    the money laundering counts as well, as mail fraud was the predicate offense for the money laundering

10   counts.  Def.'s Mem. of Law in Supp. ("Mem.") at 19.  Second, Tehin claims that prejudicial spill-over

11   from the honest-services evidence denied his right to a fair trial as guaranteed by the Sixth Amendment.

12   Def.'s § 2255 Mot. at 4.  Third, he argues that the mail fraud charges merge with the money laundering

13   charges when "proceeds" is defined to mean "profits" instead of "receipts" in accordance with *Santos*.

14   *Id.*  Fourth, he argues that the jury instructions regarding money laundering were erroneous under

15   *Santos*.  Fifth, he claims that the application of the honest-services mail fraud statute exceeded the

16   enumerated powers of the federal government in violation of the Tenth Amendment.  *Id.*

17   As a threshold matter, the Government argues that Tehin procedurally defaulted on his honest-

18   services theory claim because he failed to raise it on direct appeal.  Opp'n at 11 n.2.  On the merits, the

19   Government concedes that "the court's instructions submitted to the jury[] a theory of honest services

20   that is inconsistent with *Skilling*," but maintains that "[t]he error is harmless . . . because the jury's

21   verdict shows that it did not find Tehin guilty based only on the honest-services theory."  Opp'n at 11-

22   12. The Government draws the Court's attention to the special verdict form returned by the jury, which

23   finds as a basis for the conviction both the "money-or-property" theory and the honest-services theory

24   of mail fraud.  The government also relies on the special verdict form to argue the validity of the money

25   laundering counts, since the mail fraud predicate was based on at lease one valid theory of liability.

26   Opp'n at 15 n.4.  As to Tehin's merger claim, the Government argues that the mailings that formed the

27   basis of the mail fraud counts could not form the basis of the money laundering counts, "because they

28   did not consist of payments," and further, that "each of the charged payments . . . allowed Tehin to

United States District Court
For the Northern District of California

achieve one of the scheme's ultimate goals, not simply to continue the scheme."  Gov't Supp. Opp. at 5.[2]

## I.     The *Skilling* and *Santos* decisions

### A. *Skilling*

In *Skilling*, the Supreme Court narrowed the scope of the mail fraud statute, 18 U.S.C. § 1346, to activities constituting bribery and kickback schemes.  *Skilling*, 130 S. Ct. at 2931.  There, the petitioner's conduct involved self-dealing: "by misrepresenting the company's fiscal health, thereby artificially inflating its stock price," Skilling profited from the receipt of salaries and bonuses as well as from the sale of the company's stock.  *Id.* at 2934.  The Government did not, however, allege a bribery or kickback scheme.  *Id.*

The Court reviewed the history of the intangible-rights doctrine, from which the honest-services theory sprang.  The Court noted that in 1987, in *McNally v. United States*, 438 U.S. 350, the Court had "stopped the development of the intangible-rights doctrine in its tracks," when it held that mail fraud is "limited in scope to the protection of property rights." *Skilling*, 130 S. Ct. at 2927 (quoting *McNally*, 438 U.S. at 360).  Congress, however, responded the next year, in 1988, by enacting 18 U.S.C. § 1346, which explicitly included "a scheme or artifice to deprive another of the intangible right of honest services" within the term "scheme or artifice to defraud" in the mail fraud statute.  *Skilling*, 130 S. Ct. at 2927 (*citing* § 1341).  Nevertheless, the Court "acknowledge[d] that Skilling's vagueness challenge has force, for honest-services decisions preceding *McNally* were not models of clarity or consistency." *Id.* at 2928.  Rather than invalidate the entire statute, the Court construed the definition of honest services within § 1346 to cover "*only* the bribe-and-kickback core of the pre-*McNally* case law." *Id.* at 2931.

Because Skilling's conduct did not involve bribery or kickbacks, it fell outside the narrowed scope of § 1346.  *Id.* at 2934.  Because the indictment alleged and the jury was instructed on three

---

[2]In the government's original opposition, it did not respond to Tehin's arguments regarding *Santos* and the merger issue.  The Court issued an Order Requesting Further Briefing from the government on April 16, 2012.  On May 11, 2012, the government filed a Supplemental Opposition addressing the issue.  *See* Dkt. 202.

United States District Court
For the Northern District of California

1  alternate theories of guilt including the honest-services theory invalidated by the Court, the jury's

2  general verdict may have rested on an invalid theory; Skilling's conviction was therefore flawed. *Id.*;

3  *see Yates v. United States*, 354 U.S. 298 (1957). The Court remanded the case to the Court of Appeals

4  for the Fifth Circuit to determine whether the error was harmless. *Skilling*, 130 S. Ct. at 2934.

6  **B.**   *Santos*

7  In *United States v. Santos*, 553 U.S. 507 (2008), the Supreme Court, in a plurality opinion,

8  construed the term "proceeds" in the money laundering statute under which Santos (and Tehin) were

9  convicted. Section 1956(A)(1)(A) of Title 18 of the U.S. Code provides, in relevant part, that

10  "[w]hoever, knowing that the property involved . . . represents the proceeds of some form of unlawful

11  activity, conducts or attempts to conduct . . . a financial transaction which in fact involves the proceeds

12  of a specified unlawful activity . . . with the intent to promote the carrying of specified unlawful

13  activity," is guilty of money laundering.

14  The defendant in *Santos* operated an illegal lottery, and employed "runners" and "collectors"

15  to gather funds from gamblers and deliver them to Santos. Santos used some of the funds to pay the

16  runners and collectors, as well as the lottery's winners. *Santos*, 128 S. Ct. at 2022-23. These payments

17  formed the basis of an indictment charging Santos with both running an illegal gambling business (in

18  violation of 18 U.S.C. § 1955) and money laundering (18 U.S.C. § 1956(a)(1)(A)(I)). The majority

19  noted that paying the winners of a lottery is a "normal part of [the] crime" of running an illegal

20  gambling business. *Id.* at 2027. It found that there was "no explanation for why Congress would have

21  wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished

22  elsewhere in the Criminal Code, to radically increase the sentence for that crime."[3]  *Id.*  The plurality

23  referred to this as the "merger problem" – i.e., since functioning lotteries will presumably pay their

24  winners, and since such payments from gross receipts are intended to promote the illegal lottery,

25  equating proceeds with gross receipts would turn nearly every violation of the illegal lottery statute into

27  [3]A money laundering conviction increases the statutory maximum from 5 to 20 years, and the
Sentencing Commission has prescribed different Guidelines ranges for the two crimes. *Santos*, 128 S.
28  Ct. 2033.

a simultaneous violation of the money laundering statute.  A majority of the *Santos* Court therefore held that the term "proceeds," as applied to Santos' offenses, refers to the "profits" of the criminal activity, not to the operation's "gross receipts," and that Santos' payments to runners, collectors, and winners constituted regular expenses, rather than profits, of the illegal gambling business.  *See United States v. Van Alstyne*, 584 F.3d 803, 811 (9th Cir. 2009) (analyzing *Santos*).  Justice Stevens' concurrence, which rested on the narrower ground and is considered the holding of the opinion, reserved definition of "proceeds"  "[i]n other applications of the [money laundering] statute not involving such a perverse result."  *Id.* at 2033, n.7.

## II.    Timeliness

As an initial matter, there is the question of the timeliness of Tehin's claimed grounds for relief. The Antiterrorism and Effective Death Penalty Act imposes a one-year statute of limitations on Tehin's motion.  18 U.S.C. § 2255(f).

In most cases, the limitations period begins when the judgment of conviction becomes final, which occurs when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."  *United States v. Schwartz*, 274 F.3d 1220, 1224 (9th Cir. 2001) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)).  Pursuant to Supreme Court Rule 13, a petition for a writ of certiorari "is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."  *See also Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1990) ("the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.")  Here, Tehin's judgment became final on June 14, 2007, ninety days after the Ninth Circuit denied his appeal on March 16, 2007. Therefore, his time to file this motion under § 2255(f)(1) expired on June 14, 2008.  Tehin did not file his petition until June 20, 2011.

However, 18 U.S.C. § 2255(f) provides that a later date may be used to begin the limitation period under certain circumstances, including, *inter alia*, "(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Using a later date as the means of

calculation of the limitation period "require[s] claim-by-claim consideration," whereas using the date of final judgment requires the application "as a whole" to be rejected if time-barred. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (holding that state court's rejection of petitioner's post-conviction petition as untimely does not entitle petitioner to statutory tolling under § 2244(d)(2)); Rule 3(c) of the Rules Governing §§ 2254 and 2255 Cases ("The time for filing a petition is governed by 28 U.S.C. 2244(d).")).

Because Tehin must rely on § 2255(f)(3), the timeliness of his claims requires a claim-by-claim determination.

### A.  The *Skilling* Grounds For Relief

Tehin's first through third grounds for relief are post-*Skilling* challenges.  The Supreme Court decided *Skilling* on June 24, 2010; Tehin filed this motion on June 20, 2011.  Because "[h]e may take advantage of the date in the first clause [of § 2255(f)] . . . only if the conditions in the second clause are met," *Dodd v. United States*, 545 U.S. 353, 359 (2005), for the honest-services claims to be timely, *Skilling* must recognize a new right and the right must be retroactive.  The Court finds that *Skilling* meets these requirements.

First, although "under § 2255(f)(3), the right 'initially recognized' by the Supreme Court need not be a constitutional one," *United States v. Valdez*, 195 F.3d 544, (9th Cir 1999), *overruled on other grounds by Dodd*, 545 U.S. 353, the decision in *Skilling* squarely treated the issue of constitutional vagueness.  *Skilling*, 130 S. Ct. at 2931 ("To preserve the statute without transgressing *constitutional limitations*, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case law." (emphasis added)).  Second, a new rule is one "that breaks new ground, imposes a new obligation on the States or the Federal Government, or was not dictated by precedent existing at the time the defendant's conviction became final."  *Saffle*, 494 U.S. at 488 (internal quotations and citations omitted).  The decision in *Skilling* was not dictated by precedent existing at the time Tehin's conviction became final.  *Skilling*, 130 S. Ct. at 2982 ("Courts of Appeals have divided on how best to interpret the statute.  Uniformly, however, they have declined to throw out the statute as irremediably vague." (footnotes omitted)).  Third, *Skilling* has been applied retroactively within the Ninth Circuit.  *See United*

*States v. Jaramillo*, 413 Fed. Appx. 979, 980-81 (9th Cir. 2011) (mem.) (vacating conviction for honest-service mail fraud in light of *Skilling*); *United States v. McDonnell*, WL 2463194, *5 (C.D. Cal. 2011) ("[T]he Skilling decision may apply retroactively"); *Rodrigues v. United States*, 2011 WL 529158, *8 (D. Haw. Jan.31, 2011) ("*Skilling* must apply retroactively to criminal convictions under 18 U.S.C. § 1346.").

Because in *Skilling* the Supreme Court recognized a new right which has been applied retroactively, and because Tehin filed his motion within one year of that decision, the claims relating to it are timely.

### B. The *Santos* Ground For Relief

Tehin's fourth ground for relief relates to *Santos*. The Supreme Court decided *Santos* on June 2, 2008; Tehin filed this motion on June 20, 2011. Therefore, the Court need not decide whether *Santos* recognized a new right or is applicable retroactively, because Tehin's motion fails to meet the first requirement, that it be filed within one year of the decision.

Courts in the Ninth Circuit may apply equitable tolling to § 2255 motions. *Battles*, 362 F.3d at 1197 (quoting *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir.2003)). To meet the "very high threshold" to receive equitable tolling, *id.*, the movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The [movant] must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time," *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). Tehin does not explicitly argue that equitable tolling applies to his case. He does state that he "was unaware of [*Santos*] prior to the Supreme Court decision in *Skilling* because he was imprisoned and without reasonable legal research resources." Mot. at 8. However, the Ninth Circuit has "rejected the argument that lack of access to library materials automatically qualifie[s] as grounds for equitable tolling" and instead "emphasized the importance of a fact-specific inquiry." *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (*citing Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc)). Here, Tehin provides no facts related to his assertion that he was "without reasonable legal research resources." Without more,

equitable tolling is not warranted, and therefore the *Santos* claim is untimely.  Moreover, as discussed *infra*, even if the *Santos* claim were timely, the Court finds that it fails on the merits.

### III.    Procedural Default

On appeal, Tehin did not challenge the honest-services mail fraud jury instructions.  *See generally United States v. Tehin*, 2007 WL 836713 (9th Cir. 2007).  The government contends in a footnote that Tehin has therefore procedurally defaulted on this claim.  *See* Gov't Opp. at 11, n. 2. Normally, "[o]nce the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted."  *U.S. v. Frady*, 456 U.S. 152, 164 (1982).  However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas . . . if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent."  *Bousley*, 523 U.S. at 622.

The United States Supreme Court has "not given the term 'cause' precise content."  *Reed v. Ross*, 468 U.S. 1, 13 (1984).  However, the Supreme Court has recognized that "when the state of the law at the time . . . did not offer a 'reasonable basis' upon which to challenge the jury instructions," that constitutes "cause for failing to raise the issue at that time."  *Id.* at 16-17.  That condition is met where the Supreme Court issues a "new constitutional rule, representing a 'clear break with the past.'"  *Id.* One such circumstance is when the Court "overturn[s] a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved."  *Id.*

A number of courts reviewing habeas petitions in the wake of *Skilling* have excused a defendant's failure to challenge on direct appeal the honest services theory of mail fraud.  *See United States v. McDonnell*, 2011 U.S. Dist. LEXIS 66148, at *12-13 (C.D. Cal. Jun. 20, 2011) (stating that *Skilling* is a "fundamental shift in the law" and that defendant "could not have foreseen that the Supreme Court would declare certain applications of the Honest Services Fraud statute unconstitutional."); *United States v. Jaramillo*, 2011 U.S. App. LEXIS 3036, at *2 (9th Cir. Feb. 15, 2011 (excusing defendant's failure to raise a *Skilling* challenge to his conviction in his opening brief of his appeal because it was "filed prior to the *Skilling* opinion"); *Stayton v. United States*, 766 F. Supp. 2d 1260, 1266 (M.D. Ala.

United States District Court
For the Northern District of California

2011) (finding that *Skilling* "represents just the sort of 'clear break with the past' that the United States Supreme Court contemplated as giving rise to 'cause'" to negate procedural default). The question before this Court is somewhat murkier because in this case the trial court explicitly discussed the potential vagueness problems in the mail fraud statute that were eventually resolved in *Skilling*. *See* Gov.'t Opp., Ex. B (Trial Transcript) (Judge Walker: "We don't know what the Ninth Circuit is going to do if squarely confronted with the honest services theory . . . so I think it makes sense to ask the jury which of the theories it predicates its decision on."). Indeed, it was because of a potential future challenge to the statute that Judge Walker decided to use the dual-theory special verdict form. *Id.* This reasonably could have signaled to appellate counsel that he should raise the vagueness challenge in Tehin's direct appeal. Nonetheless, the Court agrees with the bulk of authority that *Skilling* represents a "clear break with the past" and that sufficient cause exists to negate procedural default. The Court addresses prejudice in the next section.

## IV.    Harmless Error

Tehin attacks both the mail fraud (Counts 1-6) and money laundering (Counts 7-15) counts as constitutionally infirm because they were based on the honest services theory rejected in *Skilling*. In the alternative, Tehin argues that there was "prejudicial spillover" from the honest services theory of liability. The arguments will be addressed in turn.

### A.    Mail Fraud Counts

Tehin was indicted, and the jury instructed, on an honest-services theory of mail fraud that the Government concedes is outside the scope announced by the Supreme Court in *Skilling*. As detailed above, *Skilling* narrowed the scope of the honest services prong of the mail fraud statute by limiting it to conduct constituting bribery and kickback schemes, neither of which was present in this case. 130 S. Ct. at 2931. The trial court instructed the jury that it could find Tehin guilty of mail fraud, Counts One through Six, if it agreed "that the Government has proved beyond a reasonable doubt at least one of" the two theories presented, money-or-property fraud or honest-services fraud. RT at 4198. The instruction included within the elements of honest-services fraud that,

14

**United States District Court**
For the Northern District of California

2.    . . . [T]he defendant acted with the intent to deprive his client of a right to honest services;
3.    The defendant stood in a relationship to his client that gave rise to a duty of loyalty comparable to that owed by an employee to his employer;
4.    The defendant purported to act for and in the interest of his client;
5.    But instead the defendant secretly acted in his own interest[.]"

RT at 4200.  Because there were no bribes or kickbacks alleged, the incorporation of honest-services fraud into the jury instructions and jury verdict form was error.  *See United States v. Pelisamen*, 641 F.3d at 399, 404 (9th Cir. 2011).

However, concerned that the Ninth Circuit might invalidate the honest-service theory of mail fraud, Judge Walker proposed, and counsel accepted, a special verdict form "to ask the jury which of the theories it predicates its decision on[:] either the money or property theory or the honest services theory."  RT at 4180.  The jury form read as follows:

"1.  (a) On count one, we find the defendant:

_____                                       _____
Guilty                                       Not guilty

(b) If you answered "Guilty" to part (a), did the defendant accomplish the offense by: (check one or both)

_____    (1) engaging in a scheme to obtain money or property by making false promises or statements or by omitting to disclose information when he had a duty to disclose it

_____    (2) engaging in a scheme to deprive his clients of their intangible right to honest services"

Gov't Ex. C at 2.  This same form was used for each of the six counts of mail fraud.  *Id.* at 2-7.  The jury returned a verdict with an "X" denoting guilty on all six counts, as well as an "X" on the lines next to both the money-or-property and honest-services theories.  The jury determined that Tehin was guilty of mail fraud on both the money-or-property *and* honest-services theories.

The question before this Court is whether *Skilling* requires reversal of Tehin's conviction, where the conviction was based on both a valid and an invalid theory of liability.  This precise question was answered in the negative by the Ninth Circuit in *United States v. Pelisamen*, 641 F.3d 399 (9th Cir. 2011).  There, the defendant was convicted of wire fraud in connection with the unauthorized removal of funds from his grandmother's estate, of which he was the administrator.  The trial judge instructed

15

the jury that it could convict the defendant if it found that he had (1) "defrauded the heirs of the Estate," or (2) "deprived the heirs . . . of their right to honest services," or (3) done both. *Id.* at 404. As here, the jury checked the boxes for both forms of fraud in the verdict form. On appeal (after *Skilling* was decided) the Ninth Circuit found that "as there were no bribes or kickbacks alleged, the incorporation of honest-services fraud into the jury instructions and jury verdict form was plainly erroneous under *Skilling*." *Id.* However, applying a "plain error" review as to whether the error was prejudicial, the panel held that the error did not "affect the outcome of the trial court proceedings":

> The jury checked both lines. This choice clearly indicates that the conviction was based on a valid "money or property" theory of wire fraud, as well as the invalid "honest services" theory, and therefore, remains valid.

*Id.* at 406 (*citing Hedpeth v. Pulido*, 555 U.S. 57 (2008) ("An instructional error arising in the context of multiple theories of guilt does not vitiate all the jury's findings"); *cf. Yates v. United States*, 354 U.S. 298 (1957) (a verdict may be set aside "where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected")).

Here, rather than plain error review, the appropriate standard of review is the harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see Morales v. Woodford*, 388 F.3d 1159, 1171 (9th Cir. 2004) ("*Brecht v. Abrahamson* holds that where there is constitutional error but the review is collateral rather than direct, we should not apply the 'harmless beyond a reasonable doubt' . . . standard, and should instead apply the 'less onerous' *Kotteakos* standard."). "Under *Brecht*, an instructional error is prejudicial and habeas is appropriate only if, after reviewing the record as a whole, [the Court] concludes that there was a 'substantial and injurious effect or influence in determining the jury's verdict,' or if [the Court] is 'left in grave doubt' as to whether there was such an effect." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (*citing Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Grave doubt exists in the "unusual circumstance where, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

Applying that standard, the jury verdict form makes clear that the invalid instruction had no substantial or injurious effect because the jury also based its conviction on the valid money or property theory. *See Pelisamen*, 641 F.3d at 406; *see also United States v. Muoghalu*, 2010 WL 3184178 at *11,

n.3 (N.D. Ill. 2010) (where jury was instructed on both theories of mail fraud, inclusion of honest services theory was harmless error after *Skilling*). Tehin argues that verdict form is not dispositive because the *Pelisamen* court did not rely solely on the verdict form; it also reviewed the factual record. Def.'s Reply at 5. It is true that the *Pelisamen* panel also noted that "the indictment focuses on how Defendant and Arriola worked together to take *money* from [the] estate. A key exhibit relied upon by the government shows the amounts of money to which the heirs . . . were entitled and compares those amounts to amounts actually received." *Id.* at 406. Likewise here, the indictment states that Tehin "knowingly misused and converted money belonging to his clients for his own benefit," and that he "spent in excess of $1,300,000 of the funds belonging to the Vintage Ranch Tenants to pay for unauthorized personal and business expenses, including payments to repair [his] yacht and mortgage payments on [his] personal residence." *See, e.g.*, Indictment, ¶¶ 8, 13. The government provided evidence that between March and December 2001, Tehin paid approximately $600,000 toward his mortgage from his business operating and trust accounts. 11 RT 2092. The prosecution, in its opening statements, told the jury that "there are two different theories and two different ways in which we are entitled to prove this mail fraud," and explained the two theories. *Id.* (*citing* 24 RT 4235). However, the single most important fact remains that the jury unequivocally convicted Tehin on the valid money or property theory of mail fraud, rendering the error harmless. *Pelisamen*, 641 F.3d at 406.[4]

### B.    Money Laundering Counts

Tehin asserts that the invalid honest services theory infected the money laundering counts as well, because mail fraud formed the predicate for the money laundering counts. Mem. at 20. Counts Seven through Eleven alleged that Tehin used "proceeds of a specified unlawful activity – namely, mail fraud, . . . with the intent to promote the carrying on of the specified unlawful activity." Indictment at 10. Counts Twelve through Fifteen alleged that Tehin engaged in monetary transactions with money derived from "specified unlawful activities – namely, mail fraud." Indictment at 11. The Court has

---

[4]Indeed, the *Pelisamen* court lamented that the use of the term "defraud" in its jury form without a reference to money or property was "less than ideal" but decided it did not "tilt the equities in favor of reversal." 641 F.3d at 406. Here, the form used the precise phrase "scheme to obtain money or property." Ex. C at 2.

already found that the mail fraud convictions stand in the wake of *Skilling* because the jury based its finding of guilt on a valid theory of mail fraud as well.

Tehin supplements his argument with respect to the money laundering counts by pointing out that unlike the mail fraud counts, there was no special verdict form for the money laundering counts.

*See* Ex. C at 8-9.  The verdict form simply stated: "On count seven [etc.], we find the defendant _X_ guilty." Ex. C at 8.  However, the Court finds that this fact does not alter its analysis.  The jury validly convicted Tehin of six counts of money or property mail fraud.   This is not a case where "the jury was instructed that it could rely on any of two or more independent grounds, and . . . the verdict may have rested exclusively on the insufficient ground." Reply at 16 (quoting *Zant v. Stephens*, 462 U.S. 862, 881 (1983)).  Here, the special verdict shows that the jury decided that Tehin was guilty of mail fraud under both the money-or-property and honest-services theories.  Because money-or-property remains a valid theory under which to convict for mail fraud, it also remains a valid  predicate offense for a conviction for money laundering.   Therefore, the Court rejects Tehin's argument that the money laundering convictions must be vacated.

### C.      Spillover Prejudice

Tehin also argues that "[t]he vehemence with which the government pursued the honest services theory of liability . . . makes it impossible for there not to have been 'prejudicial spillover' on to the jury's consideration all the counts charged," citing to *United States v. Lazarenko*, 564 F.3d 1026, 1042 (9th Cir. 2009).  Mem. at 22.  He points to "the emphasis on honest services and the disadvantaged nature of the clients" as examples of inflammatory evidence that "tended to spillover to other theories of liability and each and every count." *Id.* at 23.  However, as *Lazarenko* explains, spillover prejudice relates to the doctrine of retroactive misjoinder, which "arises where joinder of multiple counts was proper initially, but later developments — such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions — render the initial joinder improper." *Id.* at 1043 (quoting *United States v. Vebeliunas*, 76 F.3d 1283, 1293-94 (2d Cir. 1996)).  The test adopted by the *Lazarenko* court included analyzing "the degree of overlap and similarity

United States District Court

For the Northern District of California

between the dismissed and remaining counts" as well as "whether the trial court diligently instructed the jury and whether there is evidence, such as the jury's rendering of selective verdicts, to indicate that the jury compartmentalized the evidence." *Id.*

Here, there is no retroactive misjoinder. The Ninth Circuit did not render any of the counts of conviction invalid in Tehin's appeal; nor does this Court today. The Supreme Court rendered one of the two theories of the mail fraud counts invalid, but the other theory remains a valid theory of liability. Moreover, the trial court "diligently instructed the jury" as to the separate bases for the mail fraud count and provided a special verdict from. The Court therefore finds that there was no prejudicial spillover as set forth in *Lazarenko*. 564 F.3d at 1042.

### D.     Tenth Amendment Challenge

Tehin contends that "[t]he mail fraud and money laundering Counts One through Fifteen and the criminal statutes upon which they are based as applied to Tehin are beyond the federal government's enumerated powers and for that reason inconsistent with the Tenth Amendment." Mot. at 8. In support of this ground for relief, he argues that "[t]he case pursued and as now constituted in light of the erroneous honest services theory is well beyond the federal government['s] jurisdiction and interest in preventing the mails from being used in fraudulent schemes." Mem. at 24. This argument is derivative of Tehin's other *Skilling* attacks, which the Court has rejected. Per the jury instructions, for each of the six pieces of mail upon which the mail fraud convictions were based, the jury found that:

1.  The Defendant knowingly devised or intended to devise a scheme or plan for obtaining property;
2.  The Defendant executed the plan or scheme for obtaining property either A) by making false promises or statements, knowing that the promises or statements were false, with all of you agreeing on at least one particular false promise or statement that was made, or B) by omitting to disclose information that he had a duty to disclose, knowing that he had a duty to disclose the information, with all of you agreeing on at least one particular omission;
3.  The promises, statements or omissions were material;
4.  The defendant acted with the intent to defraud;
5.  The defendant used or caused someone to use the mails to carry out or attempt to carry out an essential part of the scheme.

RT at 4199-4200; *see also* Ex. C (Verdict Forms) at 2-7.[5]  As discussed above, this is a valid theory upon which to base a conviction for mail fraud.  Tehin does not (and likely cannot) argue that Congress does not have the authority to proscribe the use of the mail to fraudulently obtain money or property. *See Badders v. United States*, 240 U.S. 391, 393 (1916) ("The overt act of putting a letter into the post office of the United States is a matter that Congress may regulate . . . Whatever the limits to its power, it may forbid any such acts done in furtherance of a scheme it regards as contrary to public policy, whether it can forbid the scheme or not.").

## V.     *Santos* Claim

Finally, Tehin argues that the promotional money laundering counts present a "merger problem" with the mail fraud counts, citing *Santos*, 128 S. Ct. at 2022-23.  The Court found above that this claim is untimely, as Tehin has not sufficiently demonstrated that he is entitled to equitable tolling for this claim.  Nonetheless, the Court briefly addresses the merits of this claim.

In *United States v. Van Alstyne*, the Ninth Circuit applied *Santos* to a joint mail fraud-money laundering conviction.  There, the mail fraud was committed in furtherance of a Ponzi scheme.  Along with seven counts of mail fraud, Van Alstyne was convicted of three counts of money laundering.  Two of those counts involved transfers of funds made with the purpose of making "distributions" to individual investors. *Id.* at 809.  The third was a transfer made to refund one investor's "entire outlay." *Id.*  The Ninth Circuit found the former two counts improperly "merged" with the mail fraud charges, because distributions in a Ponzi scheme are "a central component of the scheme to defraud":

> [Distributing funds] directly inspired investors to send more money to Van Alstyne's funds, which could then be used to pay returns to other investors. The very nature of the scheme thus required some payments to investors for it to be at all successful.  In sending the January and June distribution checks funded by the money transfer that was charged as money laundering, Van

---

[5]The six pieces of mail were as follows: 1) a letter from Tehin to opposing counsel in the Vintage Ranch case, forwarding the settlement check; 2) a letter signed by Tehin addressed to a Vintage Ranch tenant; 3) a letter signed by Tehin sent to opposing counsel in a medical malpractice case (the "McCoy Case") in which Tehin spent the settlement check within a month of deposit; 4) a letter signed by Tehin addressed to opposing counsel in another medical malpractice case; 5) a letter from Tehin + Partners to Nancy Ferry enclosing a statement of costs; and 6) a letter signed by Tehin addressed to Mary MacDonald, opposing counsel in a contested will case in which Tehin never paid his clients their settlement.

United States District Court
For the Northern District of California

1  Alstyne "entered into a transaction paying the expenses of his illegal activity,"
2  *Santos*, 128 S. Ct. at 2027 (plurality opinion.)  Convicting Van Alstyne of money laundering for the bank transfers inherent in the "scheme" central to the mail fraud charges thus presents a "merger problem" closely parallel to the one
3  that underlay the majority result in *Santos*.

4  *Van Alstyne*, 584 F.3d at 815.  The transaction in which Van Alstyne fully refunded an investor's outlay

5  "cannot, however, be regarded as a crucial element of the 'scheme to defraud'":

6  The November 1994 transaction refunded the full amount invested by James and Evelyn Easley, in response to their complaints after the scheme began to
7  unravel. The Ponzi scheme depended on attracting new investments and using some but not all of the amount collected to pay returns to earlier investors.
8  Returning the entire amount of the Easleys' investment to them undermined rather than advanced the core scheme, as the funds returned to them would not
9  be available to lull other investors into maintaining their investment. At the same time, returning the Easleys' investment was intended to "promote the
10  carrying on," 18 U.S.C. § 1956(a)(1)(A)(I), of the "scheme" at the heart of the mail fraud counts, by discouraging detection of that scheme. As the mail fraud
11  "scheme" and money laundering elements are distinct with regard to this money laundering count, we affirm that count.
12

13  *Id.* at 816.  The panel reversed the first two counts of money laundering, but affirmed the third.

14       Here, the Court finds that the money laundering counts upon which Tehin was convicted more

15  closely resemble the latter, affirmed count, than the former, reversed ones.  Counts 12 through 15 were

16  based on the use of client funds for personal expenditures, including a $50,000 payment to a boat repair

17  company for repairs on Tehin's yacht (Count 12).  These payments clearly were not "necessary

18  payments" upon which the scheme depended and therefore do not merge with the mail fraud counts.[6]

19  *Van Alstyne*, 584 F.3d at 815.  Counts 7 through 11 were based on payments made from newer client

20  funds to existing client debts.  While the mailings forming the basis of the mail fraud counts assisted

21  in gathering the funds used in the fraudulent scheme, these payments were largely made to avoid

22  detection of the initial theft.  Unlike a Ponzi scheme, the payments did not "directly inspire investors

23  to send more money to [the defendant's] funds, which could then be used to pay returns to other

24  investors."  *Van Alstyne*, 584 F.3d at 815.  Instead, like the affirmed count in *Van Alstyne*, the payment

25  to older clients was "intended to 'promote the carrying on,' 18 U.S.C. § 1956(a)(1)(A)(I), of the

26  'scheme' at the heart of the mail fraud counts, by discouraging detection of that scheme."  *Id.* at 816.

27  _____

28  [6]Indeed, it is unclear whether Tehin is bringing a *Santos* attack on Counts 12-15. While Tehin's "Motion Pursuant to § 2255" refers to the "promotional money laundering" counts generally, the "Memorandum of Law in Support" refers only to Counts 7 through 11.  *See* Mot. at 7; Mem. at 20.

This Court likewise finds that the mail fraud "scheme" and the money laundering elements were distinct and therefore reversal is not warranted under *Santos*.

**CONCLUSION**

The Court finds that Tehin's *Skilling* attacks on his conviction are without merit.  The Court also finds that Tehin's *Santos* claim is untimely; in the alternative, the Court finds that it is too without merit.

For the reasons stated above, Tehin's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.

**IT IS SO ORDERED.**

Dated: August 22, 2012

SUSAN ILLSTON
United States District Judge